UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:18 CR 171 AGF (ACL) ) |
| GABRIEL SANTOS-CAPORAL, | ) ) |
| Defendant. | ) |

## **REPORT AND RECOMMENDATION**

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Pending before the Court is Defendant Gabriel Santos-Caporal's Motion to Dismiss the Indictment. (Doc. 20.)

Santos-Caporal is charged with a single count of unlawful reentry having been previously deported from the United States to Mexico on two prior occasions. He claims that the Indictment pending against him is invalid alleging it was secured under the supervision of an invalidly appointed Acting Attorney General (AG). Ultimately, Santos-Caporal asks this Court: a) to find that the Constitution was violated when Matthew Whitaker was temporarily appointed as Acting AG through application of the Federal Vacancies Act of 1998, 5 U.S.C. §§ 3345-3349 (FVRA), and b) to conclude that 28 U.S.C. § 508 governs how vacancies of the Attorney General's office are filled rather than the FVRA. Santos-Caporal offers dismissal of the Indictment, suppression of evidence, or re-litigation under a validly appointed AG as potential remedies.

The Government opposes the Motion.  (Docs. 21, 23.)  First, the Government argues that the Acting AG's designation was valid in that Whitaker was appointed pursuant to 5 U.S.C. § 3345(a)(3) of the FVRA.  Next, the Government explains that the United States Attorney and AUSA who secured the Indictment were acting under the supervision of the Deputy AG.  Third, the Government further relies on the fact that a legally constituted and unbiased grand jury, "a constitutional fixture in its own right," returned the Indictment against Santos-Caporal acting independently from the prosecutor and judge.  Furthermore, the Government underscores the validity of the Indictment based on the fact this Court has jurisdiction of the matter regardless of the lawfulness of Acting AG Whitaker's appointment.

After consideration of the parties' briefs and the applicable law, the undersigned recommends that the following findings of fact and conclusions of law be adopted and that Santos-Caporal's Motion to Dismiss be denied.

**<u>Findings of Fact</u>**

On November 13, 2018, a Grand Jury was convened at the federal courthouse situated in the Southeastern Division of the Eastern District of Missouri.  Under the supervision of the U.S. Attorney for the District, an AUSA presented evidence to the Grand Jury regarding the conduct of Gabriel Santos-Caporal on or about October 26, 2018 in Cape Girardeau County, Missouri.  After hearing the evidence, the Grand Jury returned the instant Indictment.

Santos-Caporal, who is from Mexico, was charged with Reentry into the United States without express consent from the Attorney General of the United States or the

Secretary of the Department of Homeland Security to reapply for admission to the United States. The Indictment further alleges that Santos-Caporal was removed from the United States on two prior occasions due to his alien status.

The Grand Jury Foreperson and the AUSA signed the Indictment. Above the AUSA's signature appears the name of the United States Attorney for the Eastern District of Missouri, who was appointed by the President and confirmed by the Senate.

One week prior to the return of the Indictment, on November 7, 2018, Attorney General Jefferson B. Sessions, III, announced his resignation, and President Donald J. Trump appointed Matthew Whitaker as Acting AG of the United States. Prior to the appointment, Whitaker served as the Chief of Staff to Attorney General Sessions for more than one year.

On November 14, 2018, the Office of Legal Counsel (OLC) for the Department of Justice issued an opinion concerning the appointment of Whitaker. A summary of the conclusion appears before the 28-page Slip Opinion:

> The President's designation of a senior Department of Justice official to serve as Acting Attorney General was expressly authorized by the Vacancies Reform Act. That act is available to the President even though the Department's organic statute prescribes an alternative succession mechanism for the office of Attorney General.
>
> The President's designation of an official who does not hold a Senate-confirmed office to serve, on a temporary basis, as Acting Attorney General was consistent with the Appointments Clause. The designation did not transform the official's position into a principal office requiring Senate confirmation.

*See* Designating an Acting Attorney General, 42 Op. O.L.C. __, at 1 (Nov. 14, 2018) (OLC Memorandum), slip-opinion version available at https://www.justice.gov/olc/file/1112251/download.

Santos-Caporal disagrees with the conclusions of the OLC.

## II. Conclusions of Law

Santos-Caporal claims the charge against him should be dismissed.  He alleges that in securing the instant Indictment, the United States Attorney for this District and the AUSA were "proceeding under the supervision of an invalidly appointed Acting Attorney General, rendering their actions *ultra vires* and void."  (Doc. 20 at 1.)  He argues that President Trump's installation of Whitaker via the FVRA is a violation of the Appointments Clause of Article II of the United States Constitution in that appointment of the Attorney General of the United States requires the advice and consent of the Senate.

To support his position, Santos-Caporal argues that the Attorney General has broad authority to supervise United States Attorneys and AUSAs (*id*. at 3-4); the installation of Whitaker as Acting AG violates the Appointments Clause (*id*. at 4-6); 28 U.S.C. § 508 governs the succession to the Office of Attorney General (*id*. at 6-7); the FVRA does not properly apply to Whitaker's installation (*id*. 7-8); the Doctrine of Constitutional Avoidance requires recognizing that § 508, not the FVRA, governs succession to the office of Attorney General of the United States (*id*. at 8-9); and Whitaker's installation violates § 508 and is invalid (*id*. at 9-12).  Finally, Santos-Caporal claims that the actions of invalidly appointed officers have no force and effect (*i.e*., the

activities of the presidentially appointed and Senate confirmed U.S. Attorneys in each of the 93 judicial districts in the nation along with the actions of AUSA's acting under them are void).

The instant Motion requires the Court to address two questions. First, was Acting AG Matthew Whitaker's appointment invalid? Second, were the U.S. Attorney and AUSA who secured the Indictment proceeding under the supervision of an invalidly appointed Acting AG?

## II.A.   The "special and temporary" appointment of an Acting AG is lawful

Santos-Caporal claims that the appointment of Acting AG Whitaker without the advice and consent of the Senate violates the Appointments Clause of Article II of the U.S. Constitution. Specifically, Santos-Caporal:

> asserts that the President, acting alone and without the approval of the Senate for the princip[al] officer cannot and should not act for the people of the United States through his appointed Attorney General to make the decision to prosecute and imprison people presently in violation of immigration law as opposed to simple deportation.

(Doc. 20 at 2.)

In the recent decision of *N.L.R.B. v. SW General, Inc.*, 137 S.Ct. 929, 934-35 (2017), Chief Justice John Roberts acknowledged the need for acting officials to be appointed by the President when a vacancy occurs, as follows:

> Article II of the Constitution requires that the President obtain "the Advice and Consent of the Senate" before appointing "Officers of the United States." § 2, cl. 2. Given this provision, the responsibilities of an office requiring

> Presidential appointment and Senate confirmation—known as a "PAS"[1] office—may go unperformed if a vacancy arises and the President and Senate cannot promptly agree on a replacement. Congress has long accounted for this reality by authorizing the President to direct certain officials to temporarily carry out the duties of a vacant PAS office in an acting capacity, without Senate confirmation.
>
> The … FVRA … is the latest version of that authorization. Section 3345(a) of the FVRA authorizes three classes of Government officials to become acting officers. The general rule is that the first assistant to a vacant office shall become the acting officer. *The President may override that default rule by directing* either a person serving in a different PAS office or *a senior employee within the relevant agency to become the acting officer instead.*

*SW General, Inc.*, 137 S.Ct. at 934-35. (Emphasis added).

Later in the opinion, Chief Justice Roberts set out the history of the FVRA dating back to 1792. Significantly, "[s]ince President Washington's first term, Congress has given the President limited authority to appoint acting officials to temporarily perform the functions of a vacant PAS office without first obtaining Senate approval." *Id*. at 935.

By 1998, Congress passed the FVRA. The Chief Justice explained that § 3345(a)(1) sets out a general rule that:

> If a person serving in a PAS office dies, resigns, or is otherwise unable to perform his duties, the first assistant to that office "shall perform" the office's "functions and duties . . . temporarily in an acting capacity."

*SW General, Inc.*, 137 S.Ct. at 936. Even so, the Chief Justice noted that the next two paragraphs identify less restrictive *alternatives* to the general rule, including § 3345(a)(3)'s directive that:

---

[1] A vacancy arising in an office that requires Presidential appointment and Senate confirmation is known as "a PAS office."

> "notwithstanding paragraph (1)," the President "may direct" a person to perform acting duties if the person served in a senior position in the relevant agency for at least 90 days in the 365-day period preceding the vacancy.[ ]

*Id*. at 936.  Santos-Caporal has not disputed that Whitaker meets the seniority and length of employment requirements of § 3345(a)(3) as he had been Chief of Staff and Senior Counselor to the Attorney General at the Department of Justice for at least 90 days prior to the vacancy at a rate of GS-15 or higher.

The Chief Justice also discussed time limits on acting service and penalties for non-compliance with the FVRA provisions.  Sections 3346(a)-(b)(1) permit acting service for "210 days beginning on the date the vacancy occurs"; toll that time limit while nominations are pending; and starts a new 210-day clock if the nomination is "rejected, withdrawn, or returned."  *Id*.  Should there be a second nomination, "the time limit tolls once more, and an acting officer can serve an additional 210 days if the second nomination proves unsuccessful."  *Id*., citing § 3346(b)(2).  If an appointment is not in compliance with the FVRA, § 3348(d) provides that "any function or duty of a vacant office" performed by a person not properly serving under the statute "shall have no force or effect."  *Id*. at 937.

The issue in *S.W. Gen., Inc*., addressed the FVRA's, that is 5 U.S.C. § 3345(b)(1)'s, prohibition on certain persons serving as acting officers following a Presidential nomination for such person to permanently fill the vacant office.  The question presented was whether the limitation in § 3345(b)(1), "applies only to first assistants who have automatically assumed acting duties, or whether it also applies to

PAS officers and senior employees serving as acting officers at the President's behest." 137 S.Ct. at 935.  The Court held:

> Subject to one narrow exception, [§ 3345(b)(1)] prohibits anyone who has been nominated to fill a vacant PAS office from performing the duties of that office in an acting capacity, regardless of whether the acting officer was appointed under subsection (a)(1), (a)(2), or (a)(3).  It is not limited to first assistants who automatically assume acting duties under (a)(1).

*Id*. at 941.  As a consequence of the ruling, a Complaint against SW General for unfair labor practices was found to be invalid because the Complaint was secured under Acting General Counsel Lafe Solomon of the National Labor Relations Board (NLRB) <u>after President Barrack Obama nominated Solomon to serve as General Counsel on a permanent basis</u>.

A thorough examination of *S.W. Gen., Inc*., is necessary because Santos-Caporal relies on Justice Thomas' concurrence to support his position that:

> [t]he Appointments Clause of the U.S. Constitution governs Presidential appointments and "prescribes the <u>exclusive</u> process by which the President may appoint 'officers of the United States.'"  137 S.Ct. at 945 (Thomas, J., concurring) (emphasis [supplied by Defendant]).

(Doc. 20 at 4.)  To support his constitutional challenge, Santos-Caporal relies on Justice Thomas' conclusion regarding the exclusive nature of the Appointment Clause for appointments of officers of the United States.  Concurrences, however, are not binding precedent when accompanying a majority opinion.  *See Alexander v. Sandoval*, 121 S.Ct. 1511, 1519 (2001) (noting that a majority "holding is not made coextensive with the concurrence because the[ ] opinion does not expressly preclude … the concurrence's

approach."). Additionally, Justice Thomas' opinion was not joined by any of the other eight participating Justices, including the five other Justices in the majority.

In recent weeks, three district courts that were presented with the same issue as the one in the instant Motion to Dismiss have concluded that the appointment of Acting AG Whitaker was not in violation of the Appointments Clause of the Constitution, U.S. Const. art. II, § 2, cl. 2. *See United States v. Valencia*, No. 5:17-CR-822-DAE(1)(2), 2018 WL 6182755, at *7 (W.D. Tex. Nov. 27, 2018) (concluding that appointment of Whitaker as Acting AG fell within the "special and temporary" exception to principal officer definition and thus was not unconstitutional), appeal filed, Dec. 3, 2018; *United States v. Peters*, No. 6:17-CR-55-REW-HAI-2, 2018 WL 6313534, at *4-5 (E.D. Ky. Dec. 3, 2018) (concluding that appointment of Whitaker as Acting AG was constitutional and was in compliance with FVRA); *United States v. Smith*, No. 1:18-CR-115-MR-WCM, 2018 WL 6834712, at *3 (W.D. N.C. Dec. 28, 2018) (concluding that "the designation of Whitaker as Acting AG under FVRA constituted the "special and temporary" appointment of an inferior officer to perform the duties of a principal officer and thus did not violate the Appointments Clause.").

As District Judge Robert E. Wier reasoned:

> The President's ad interim appointment of Mr. Whitaker was not subject to the constitutional "Advice and Consent" requirement… The Supreme Court has deemed abridged designations, like Mr. Whitaker's, "inferior" non-PAS appointments. *See, e.g.*, *United States v. Eaton*, 18 S. Ct. 374, 397 (1898) ("[A] subordinate officer [ ] charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions, [ ] is not thereby transformed into the superior and permanent official.")[ ]

*Peters*, 2018 WL 6075791 at *3.

Senior District Judge David Alan Ezra conducted an analysis similar to Judge Wier and added:

> *Morrison v. Olsen* reiterated the exception in *Eaton*. An individual can perform the duties of a principal officer "for a limited time and under special temporary conditions" without being "transformed into the superior and permanent official" requiring Senate confirmation. *Morrison*, 487 U.S. 651, 672-73 (1988). The position at issue in *Morrison*, an Independent Counsel, is perhaps most analogous to the one here, although [Judge Ezra] recognize[d] key distinctions between the position of Attorney General and the position of Independent Counsel. *Edmond v. United States* clarified the definition of a principal officer as one who acts without the supervision of anyone confirmed by the Senate, but it did not overrule the "special and temporary conditions" exception recognized in *Morrison* and *Eaton*. 520 U.S. 651, 659 (1997).

*United States v. Valencia*, 2018 WL 6182755, at *6. Judge Ezra concluded that although the Attorney General falls within the *Edmond* definition of principal officer, the President may appoint a person "to perform the duties of the office under § 3345, without the advice and consent of the Senate, if the appointment falls within the 'special and temporary' exception." *Id*. at *7 (citing *SW General, Inc*., 137 S.Ct. 946, n. 1 (Justice Thomas concurring); *Morrison*, 520 U.S. at 659; *Eaton*, 169 U.S. at 341.

The "special and temporary" exception identified in *Eaton* holds important precedential value for Acting AG Whitaker's appointment. In his concurrence, Justice Thomas concluded that "Courts will inevitably be called upon to determine whether the Constitution permits the appointment of principal officers pursuant to the FVRA without Senate confirmation." *SW General, Inc*., 137 S.Ct. 946, n. 1 (Justice Thomas

concurring). Under the circumstances of *SW Gen., Inc.*, Justice Thomas concluded that the FVRA barred the appointment of Solomon. Justice Thomas' "grave constitutional concern" that appointing principal officers under the FVRA without the advice and consent of the Senate would violate the Appointments Clause arose based on the fact that Solomon's <u>"temporary" and "acting" appointment</u> as general counsel <u>lasted more than three years where the statutory term is only four years</u>. Citing *Eaton*, Justice Thomas concluded "[t]here was thus nothing "special and temporary" about Solomon's appointment. *Id*.

After recognizing that the *Eaton* and *Morrison* exception for "special and temporary" appointments of what otherwise would be principal officers has not been overruled, Judge Ezra questioned whether the appointment of Acting AG Whitaker falls within the exception. He concluded that an examination of the length of Whitaker's appointment to date required a finding that the exception applies. Judge Ezra added that the current analysis does not "foreclose a later challenge should the President either (1) make a statement that implies Whitaker's appointment is permanent; or (2) fail to nominate a permanent replacement within the timeframe designated by statute." *Id*.

It is also worth noting that although the quote from Justice Thomas upon which Santos-Caporal relies does not have precedential value, Justice Thomas' overall analysis supports the constitutionality of Acting AG Whitaker's appointment under the facts presented.

With regard to Santos-Caporal's claim that 28 U.S.C. § 508 alone governs how a vacancy of the office of Attorney General is to be filled, the statute itself does not support his position.  Subsection (a) provides:

> In case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General *may* exercise all duties of that office, and for the purpose of section 3345 of title 5 the Deputy Attorney General is the first assistant to the Attorney General.

28 U.S.C. § 508(a).  (Emphasis added.)   The indication that the Deputy AG "*may* exercise all the duties of" the office of Attorney General is much different than a directive that the Deputy AG "shall" succeed to the office of Attorney General in case of vacancy.

Furthermore, § 508(a) references § 3345(a) which as discussed above offers the alternative appointment option utilized by President Trump in appointing Acting AG Whitaker.  The use of the word "may" does not yield an interpretation that the succession rules of § 508 are exclusive.  Furthermore, reference to § 3345(a) reinforces one of Congress' objectives in enacting the FVRA of 1998, as described by Chief Justice Roberts, to "expand[ ] the pool of individuals the President could appoint as acting officers," *S.W. Gen., Inc.*, 137 S.Ct. at 942.

Santos-Caporal claims that the Eighth Circuit's decision in *United States v. Guzek*, 527 F.2d 552, 559-60 (8th Cir. 1975) supports his position that § 508 governs vacancies of the office of Attorney General.  In particular, he avers that the *Guzek* panel "acknowledged that section 508 applies when a vacancy arises in the office of Attorney General, and rejected the Government's claim that 5 U.S.C. § 3345 *et seq.* should apply."

(Doc. 20 at 7.)  *Guzek*, however, is distinguishable from the instant facts.  First, it was the appellant-defendants in *Guzek*, not the Government, who argued that §§ 3345 and 3348 should apply under the circumstances presented.  More than forty years after *Guzek*, those sections have been amended and provide the President with alternative options for appointing temporary acting officers.  Next, *Guzek* involved the succession of a Solicitor General, Robert H. Bork, to the office of Attorney General following the resignation of both the Attorney General and Deputy AG.  The *Guzek* panel held that § 508(b) contains no language limiting the term of the Solicitor General as Acting AG.  *Guzek*, 527 F.2d at 560.  When Bork became Acting AG he succeeded to all powers of the office of the Attorney General without circumscription by what was at that time a 30-day limitation for temporary appointment.  *Id*. (Citations omitted.)

Santos-Caporal also argues that "[a]lthough it is clear as a matter of statutory interpretation that the more specific provisions of section 508 govern the appointment of an Acting Attorney General under the current circumstances, the doctrine of constitutional avoidance also mandates that conclusion."  (Doc. 20 at 8.)  This argument assumes that application of § 3345(a)(3), which allows the President to override the succession rules temporarily, violates the Constitution.  As discussed above, the serious constitutional problem asserted by Santos-Caporal is unfounded based on the "special and temporary" nature of Acting AG Whitaker's appointment.

In light of the foregoing, President Trump's appointment of Matthew Whitaker to temporarily serve as Acting AG is authorized by the FVRA and not in violation of the Appointments Clause.

## II.B. An Invalid Designation of an Acting AG does not Affect the Statutory Authority of the U.S. Attorney to Bring This Prosecution

Santos-Caporal recognizes that 28 U.S.C. § 510 enables the Attorney General to delegate his or her power "to the Assistant Attorney General who may in turn delegate his power to the United States Attorneys who may delegate their power to the AUSAs." Nevertheless, he emphasizes that 28 U.S.C. §§ 516 and 519 charge the Attorney General with: 1) supervising all litigation in which the United States is a party and 2) directing all United States Attorneys and AUSAs in the discharge of their duties. (Doc. 20 at 3.)

This Court finds Judge Ezra's conclusion in the similar case of *Valencia*, supra, to be persuasive:

> United States Attorney[s] ha[ve] the statutory authority to "prosecute … all offenses against the United States." 28 U.S.C. § 547(1). The [district c]ourt[s], further ha[ve] jurisdiction to hear [ ] case[s concerning offenses against the laws of the United States] under 18 U.S.C. § 3231. Federal law thus authorizes [such] criminal prosecution, and there has been no challenge in this proceeding to the constitutionality of 28 U.S.C. § 547. Additionally, pursuant to the authority granted by 28 U.S.C. § 515, an AUSA may conduct a grand jury proceeding. "An indictment returned by a legally constituted and unbiased grand jury … is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). There is no allegation here of any misconduct before the grand jury, and the Court has "no authority to dismiss the indictment … absent a finding that [there was] prejudice[ ]" to the defendant based on misconduct. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988).

*Valencia*, 2018 WL 6182755, at *7. *See also Smith*, 2018 WL 6834712 at *3; *Peters*, 2018 WL 6313534 at *6-7.

As to the litigation of this matter, the record is undisputed. The United States Attorney was appointed by the President and confirmed by the Senate. The

AUSA discharged his duties under the authority of the United States Attorney. The grand jury heard evidence and returned the instant indictment in the usual and customary manner, and there has been no challenge of misconduct with regard to the grand jury process.  Lastly, this Court has jurisdiction to hear the case pursuant to 18 U.S.C. § 3231.

In consideration of the foregoing, Santos-Caporal's Motion (Doc. 20) should be denied as he fails to demonstrate a violation warranting dismissal of the Indictment.

### III.  Conclusion

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that Santos-Caporal's Motion to Dismiss (Doc. 20) be **denied**.

Further, the parties are advised that they have fourteen days in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

*/s/ Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of January, 2019.